IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALISHA NICOLE OESTREICH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00152-O-BL |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Alisha Nicole Oestreich seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The United States District Judge reassigned this case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be affirmed and this case dismissed.

### I. STATEMENT OF THE CASE

Oestreich filed an application for DIB and SSI on February 4, 2013, alleging disabling impairments as of January 1, 2010. That application was denied initially on April 4, 2013 and again on reconsideration on July 7, 2013. Oestreich requested a hearing, which was held before an Administrative Law Judge on June 6, 2014. The ALJ issued a decision on September 16, 2014 finding Oestreich not disabled.

Specifically, the ALJ found during step one that Oestreich had not engaged in substantial gainful activity since January 1, 2010. (Doc. 12-3, 15). At step two, the ALJ determined

Oestreich had the severe impairments of degenerative disc disease and degenerative joint disease. (Doc. 12-3, 15). In the third step, the ALJ found those severe impairments did not meet and were not equivalent to any listed impairments. (Doc. 12-3, 17-18). The step three analysis continued, with the ALJ finding Oestreich

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant should be allowed to sit or stand at will …. The claimant can perform occasional postural movements, but she cannot climb ropes, ladders or scaffolds. The claimant can frequently but not constantly finger and handle. The claimant needs to avoid temperature extremes and hazards. The claimant can perform detailed but not complex job tasks due to physical pain rather than a mental impairment.

(Doc. 12-3, 18). At step four, the ALJ concluded Oestreich was unable to perform any past relevant work, and at step five ruled the Administration met its burden by showing there were sufficient jobs in the economy Oestreich could perform, and that Oestreich was therefore not disabled. (Doc. 12-3, 22-24).

Oestreich applied to the Appeals Council, which denied review on October 29, 2015. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("The Commissioner's final decision includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to her pleadings, testimony at the administrative hearing, and the administrative record, Oestreich was 32 years old and living with her husband and two children at the time of the administrative hearing. She has an associate's degree and experience working in the front office of a medical practice and in child care. She complains of physical ailments including severe back pain and rheumatoid arthritis, and she alleges these physical impairments render her disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423 (d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b).

To evaluate a disability claim, the Commissioner follows a "five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [she] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)).

Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton*, 209 F.3d at 452.

The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton*, 209 F.3d at 452.

## IV. DISCUSSION

Oestreich raises two issues on appeal. She claims there is not substantial evidence supporting the RFC and that the ALJ improperly weighted the opinions of treating physicians.

### A. Substantial Evidence and the RFC

Oestreich argues the RFC is not supported by substantial evidence because the "ALJ did not give proper consideration to her subjective complaints of pain ...." (Doc. 15, 9). An ALJ must conduct a four-step credibility inquiry in considering a claimant's testimony regarding their symptoms. 20 C.F.R. § 404.1529. First, the ALJ must determine whether a medically determinable impairment exists that could reasonably produce the claimant's alleged pain and symptoms. *Id.* In the second and third steps, the ALJ decides whether the impairment is listed, or is equivalent to an impairment listed. *Id.* Fourth, the ALJ should evaluate the persistence and effects of those symptoms to determine what impact they might have on the claimant's RFC. *Id.*

An ALJ does not need to explicate at each step of the credibility process. *Clary v. Barnhart*, 214 Fed.App'x. 479, 482 (5th Cir. 2007); *Hillman v. Barnhart*, 170 Fed.App'x. 909, 913 (5th Cir. 2006); *see Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989) (implied credibility determinations are permissible). Furthermore, an ALJ is entitled to weigh the evidence provided by medical experts and lay witnesses alike, and does not err in finding medical opinions more persuasive than the claimant's subjective evidence. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Here, Oestreich asserts "the objective evidence used to discredit [her] pain symptoms does not actually do so and the ALJ does not provide analysis for why [her] pain symptoms should not be given more consideration." (Doc. 15, 9). However, the burden is on Oestreich to show she is disabled, and so Oestreich's claim must show affirmatively that the ALJ's analysis of the record is objectively unsound. Oestreich argues the ALJ relies impermissibly on a finding that her daily activities are inconsistent with her allegations of pain, citing case law from other Circuits holding some types of daily activity did not mean the claimants in those cases were capable of substantially gainful employment. (Doc. 15, 11 citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). However, here the ALJ did not state that her daily activities – along with other evidence – showed that Oestreich was capable of substantial gainful employment, but rather that they weakened the credibility of her assertions about the level and persistence and effects of her pain. (Doc. 12-3, 20). At the hearing, Oestreich bore the burden of showing disability, and in this appeal must show that the ALJ's decision is unsupported by substantial evidence. She has failed to show such a lack of substantial evidence as regards the credibility determination.

Oestreich also contends that determining her rheumatoid arthritis was a non-severe impairment resulted in prejudicial error. (Doc. 15, 11). However, any error in labeling the severity of the impairment is harmless without either showing that the RFC did not properly incorporate the rheumatoid arthritis or that the impairment met or equaled one listed in the Appendix. *Waters* 276 F.3d at 718. As Oestreich has not referred in her briefs to any listing in the Appendix, the only viable reading of her argument is that the RFC as assessed by the ALJ did not properly incorporate the rheumatoid arthritis. Again, the ALJ's decision and RFC must be supported by substantial evidence, meaning sufficient basis for a reasonable mind to make the same finding as the ALJ. *Watson* 288 F.3d at 215. Oestreich must show no reasonable person could evaluate the record evidence and determine the RFC properly compensates for the rheumatoid arthritis, even if it were incorrectly labeled as non-severe. *See Boothe v. Colvin*, 2013 WL 3809689, at *5 (N.D. Tex. July 23, 2013) ("... assuming *arguendo* that the ALJ erred by not finding ... impairments are severe, the error is harmless because the ALJ considered these conditions in his RFC analysis."). This burden is not met only by highlighting some of the record evidence, even if that evidence might lead some to a different conclusion than the ALJ. *See Masterson*, 309 F.3d at 272. Oestreich has not shown the RFC determination is unsupported by substantial evidence.

Oestreich further argues the ALJ failed to account for time she "would spend in procedures and appointments and its effect on her employability." (Doc. 15, 14). This argument represents an improper formulation of the disability standard. A person is disabled when they are afflicted with limitations that prevent them from any substantial gainful activity, not when time constraints from impairments might foreclose a traditional employment schedule. *See Audler*, 501 F.3d at 448. Oestreich did not argue at the administrative hearing that any condition required

persistent and lengthy therapy, thereby preventing any employment, and does so now *post hoc* only by showing that during a certain period she went to aqua therapy roughly two or three times a week. (Doc. 15, 15). Oestreich provides no authority for the proposition that an ALJ need consider the time a claimant might spend in therapy as detracting from their ability to otherwise participate in substantial gainful activity, and again, it was her burden to prove disability during the administrative process, and in appealing that decision to show either the administration applied the wrong legal standards or that the ALJ's decision is unsupported by substantial evidence.

Oestreich has not shown that any of these determinations by the ALJ could not be made by a reasonable person upon reviewing the record evidence.

### B. Weight of Medical Opinions

Finally, Oestreich asserts that the ALJ "ignored and discounted opinions by [her] treating physicians and medical professionals, and placed greater weight on opinions of those who had not examined Oestreich." (Doc. 15, 17-18). Specifically, Oestreich complains about limitations assessed by one consulting expert being incorporated into the RFC, an opinion by a treating physician that she is disabled being disregarded, and limitations putatively assessed by a physician's assistant being given lesser consideration. (Doc. 15, 15-17).

Oestreich argues not that the opinions of treating physicians were rejected, but that the ALJ's RFC determination more closely matches the opinion of a consulting physician than her interpretation of some opinions offered by her treating physicians. (Doc. 15, 16). She does not, however, argue that the opinion of an acceptable treating source was rejected without the required analysis or that the opinions of this consultant physician are not a sufficient basis for the RFC determination, but only her treating physicians offered evidence she believes should have

led to a finding of disability. (Doc. 15, 16). Once more, this is not sufficient grounds for reversal. Without a more specific allegation of an incorrect legal standard or a demonstrated lack of substantial evidence supporting the ALJ determinations, the administrative decision must be upheld.

Oestreich specifically argues that two such opinion was disregarded contrary to the applicable legal standards. However, the first "opinion" so offered by Dr. Mudaliar is that Oestreich is disabled, which is an ultimate issue reserved to the Commissioner. A physician cannot unilaterally declare that a patient is disabled and render that claimant entitled to benefits, but rather must assess medical limitations that the Commissioner can determine either prevents the claimant from participating in substantial gainful activity or does not. Regardless of the point at which Dr. Mudaliar determined that she believed Oestreich was disabled, only the physician's opinion on medical limitations – and not on the legal question of disability – is entitled to consideration by the ALJ.

Finally, a physician's assistant is an "other source" under the regulations, which state that the Commissioner "may use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(a), (d). An "other source" such as a physician's assistant may be used to establish severity and limitations of impairments assessed by a medical doctor, but not to determine the existence of such an impairment. *Id.* Oestreich again attempts to muddy the waters by saying the "ALJ failed to account for other treating professional opinions opining on Oestreich's inability to work or continue normal activities." (Doc. 15, 17). The PA's opinion Oestreich believes was denied due consideration was that "Oestreich's conditions resulted in 'activity limitation.'" (Doc. 15, 17 quoting Doc. 13, 31). Oestreich cannot carry her burden by producing "professional opinions"

that assert she cannot work, whether they come from M.D.s or physician's assistants, but instead must show medical impairments diagnosed by acceptable sources that must lead to a conclusion she is unable to participate in substantial gainful activity. The ALJ did not err by failing to discuss at length the opinion of a physician's assistant, especially when it was largely consistent with other medical evidence that was considered explicitly in the decision. An ALJ need not list specifically evidence accepted and rejected when making the decision. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

Oestreich has not shown that evidence from any medical source was analyzed using incorrect legal standards or that there was no substantial basis for the ALJ's decision.

## V. CONCLUSION

Oestreich has failed to show that the decision of the Commissioner is either the result of incorrect legal standards or unsupported by substantial evidence. Considering the above, it is **RECOMMENDED** the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docked of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing

before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated December 19, 2016.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE